SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Four Times Square
New York, New York 10036
(212) 735-3000

Counsel for Debtors and
  Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | :    Chapter 11 |
|  | : |
| EXCEL MARITIME CARRIERS LTD., et al., | :    Case No. 13-23060 (RDD) |
|  | : |
| Debtors.[1] | :    (Jointly Administered) |
|  | : |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER &**
**FLOM LLP, COUNSEL FOR THE DEBTORS, FOR ALLOWANCE AND PAYMENT**
**OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF**
**EXPENSES INCURRED FROM JULY 2, 2013 THROUGH AND**
**INCLUDING OCTOBER 31, 2013**

| | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Date of Retention: | *Nunc pro tunc* to July 2, 2013 |

---

[1]    The "<u>Debtors</u>" are Excel Maritime Carriers LLC, Excel Maritime Carriers Ltd., Amanda Enterprises Ltd., Barland Holdings Inc., Candy Enterprises Inc., Castalia Services Ltd., Centel Shipping Company Ltd., Coal Gypsy Shipco LLC, Coal Hunter Shipco LLC, Coal Pride Shipco LLC, Fianna Navigation S.A., Fountain Services Ltd., Grain Express Shipco LLC, Grain Harvester Shipco LLC, Harvey Development Corp., Ingram Ltd., Iron Anne Shipco LLC, Iron Beauty Shipco LLC, Iron Bill Shipco LLC, Iron Bradyn Shipco LLC, Iron Brooke Shipco LLC, Iron Fuzeyya Shipco LLC, Iron Kalypso Shipco LLC, Iron Knight Shipco LLC, Iron Lindrew Shipco LLC, Iron Manolis Shipco LLC, Iron Miner Shipco LLC, Iron Vassilis Shipco LLC, Kirmar Shipco LLC, Liegh Jane Navigation S.A, Lowlands Beilun Shipco LLC, Marias Trading Inc., Ore Hansa Shipco LLC, Pascha Shipco LLC, Point Holdings Ltd., Sandra Shipco LLC, Santa Barbara Shipco LLC, Snapper Marine Ltd., Tanaka Services Ltd., Teagan Shipholding S.A., Thurman International Ltd.,

*(cont'd)*

| | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought: | July 2, 2013 through October 31, 2013 |
| Amount of Compensation Requested (Including Holdback Amounts): | $ 6,057,127.01 |
| Amount of Expense Reimbursement Requested: | $ 153,034.06 |
| Total Compensation and Expense Reimbursement Requested: | $ 6,210,161.07[*] |
| Voluntary Reductions: | $ 415,428.65 |
| Total Compensation and Expenses Previously Requested: | N/A |
| Total Compensation and Expenses Previously Awarded: | N/A |
| This is a | ____Monthly __X__ Interim ____Final Fee Application |

---

*(cont'd from previous page)*
Whitelaw Enterprises Co., Liegh Jane Navigation S.A., and Yasmine International Inc. The address for Excel Maritime Carriers LLC is 777 Westchester Avenue, Suite 101, White Plains, New York USA 10604 and the address for all other Debtors is c/o Excel Maritime Carriers Ltd., 17th KM National Road Athens, Lamia & Finikos Street, 145 64 Nea Kifisia, Athens, Greece.

[*] Pursuant to the Interim Fee Order, Skadden has already received payments totaling $2,000,000. If the requested compensation and expenses are approved by Court, the total payable by Debtors to Skadden will be $4,210,161.07.

**Hearing Date:  January 27, 2014 at 10:00 a.m. (EST)**
**Objection Deadline:  January 16, 2014 at 5:00 p.m. (EST)**

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Four Times Square
New York, New York 10036
(212) 735-3000

Counsel for Debtors and
  Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
EXCEL MARITIME CARRIERS LTD., et                                 :    Case No. 13-23060 (RDD)
al.,                                                             :
                                                                 :
                      Debtors.                                   :    (Jointly Administered)
                                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP, COUNSEL FOR THE DEBTORS, FOR ALLOWANCE AND PAYMENT
OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED FROM JULY 2, 2013 THROUGH AND
INCLUDING OCTOBER 31, 2013**

In accordance with this Court's order pursuant to sections 105(a) and 331 of title

11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules

for the Southern District of New York (the "Local Bankruptcy Rules") establishing procedures

for interim compensation and reimbursement of professional expenses (the "Interim

Compensation Procedures Order") [Docket No. 289], Skadden, Arps, Slate, Meagher & Flom

LLP and its affiliated law offices ("Skadden" or the "Firm"), counsel to the above-captioned

debtors and debtors-in-possession (collectively, the "Debtors"),[1] submit this first interim fee

application (the "Interim Application") for compensation for services rendered and

reimbursement of expenses for the period from July 2, 2013 through and including October 31,

2013 (the "Application Period").  In support of this Interim Application, Skadden respectfully

represents:

## JURISDICTION

1.      This Court has jurisdiction to consider this Interim Application under 28

U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these

cases and this Interim Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

The legal predicates for the relief requested herein are Bankruptcy Code sections 330 and 331,

Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

2.      On July 1, 2013 (the "Petition Date"), the Debtors each commenced with

this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are

authorized to operate their businesses and manage their properties as debtors in possession

---

[1]      The Debtors and the last four digits of their taxpayer identification numbers are as follows: Excel Maritime
Carriers LLC (9430), Excel Maritime Carriers Ltd. (2212), Amanda Enterprises Limited (8034), Barland
Holdings Inc. (8057), Candy Enterprises Inc. (8053), Castalia Services Ltd. (8055), Centel Shipping Company
Limited (0861), Coal Gypsy Shipco LLC (2212), Coal Hunter Shipco LLC (2212), Coal Pride Shipco LLC
(2212), Fianna Navigation S.A. (8041), Fountain Services Limited (8054), Grain Express Shipco LLC (2212),
Grain Harvester Shipco LLC (2212), Harvey Development Corp. (8048), Ingram Limited (8039), Iron Anne
Shipco LLC (2212), Iron Beauty Shipco LLC (2212), Iron Bill Shipco LLC (2212), Iron Bradyn Shipco LLC
(2212), Iron Brooke Shipco LLC (2212), Iron Fuzeyya Shipco LLC (2212), Iron Kalypso Shipco LLC (2212),
Iron Knight Shipco LLC (2212), Iron Lindrew Shipco LLC (2212), Iron Manolis Shipco LLC (2212), Iron
Miner Shipco LLC (2212), Iron Vassilis Shipco LLC (2212), Kirmar Shipco LLC (2212), Liegh Jane
Navigation S.A. (8043), Lowlands Beilun Shipco LLC (2212), Marias Trading Inc. (8036), Ore Hansa Shipco
LLC (2212), Pascha Shipco LLC (2212), Point Holdings Ltd. (NA), Sandra Shipco LLC (2212), Santa Barbara
Shipco LLC (2212), Snapper Marine Ltd. (8051), Tanaka Services Ltd. (8037), Teagan Shipholding S.A. (8045),
Thurman International Ltd. (NA), Whitelaw Enterprises Co. (8050), and Yasmine International Inc.
(8046).  The address for Excel Maritime Carriers LLC is 777 Westchester Avenue, Suite 101, White Plains,
New York USA 10604 and the address for all other Debtors is c/o Excel Maritime Carriers Ltd., 17th KM
National Road Athens, Lamia & Finikos Street, 145 64 Nea Kifisia, Athens, Greece.

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being

jointly administered pursuant to Bankruptcy Rule 1015(b).

3.      On July 10, 2013, the United States Trustee for the Southern District of

New York (the "U.S. Trustee") appointed a committee of unsecured creditors in these chapter 11

cases (the "Creditors' Committee"). The U.S. Trustee subsequently amended such appointments

to the Creditors' Committee as of August 10, 2013. No trustee or examiner has been appointed

in the Debtors' chapter 11 cases.

4.      The Debtors are providers of worldwide sea borne transportation for "dry

bulk" cargo including, among others, iron ore, coal and grain, collectively referred to as "major

bulks" and steel products, fertilizers, cement, bauxite, sugar and scrap metal, collectively referred

to as "minor bulks." The dry bulk market is the primary provider of global commodities

transportation. The company owns a fleet of 36 vessels, one of which, the M/V Christine, is

owned by a non-Debtor in which Excel beneficially owns a 71.4% interest with a total carrying

capacity of approximately 3.3 million deadweight tons (dwt), making the company one of the

world's largest independent dry bulk operators. The factual background regarding the Debtors,

including their business operations, their capital and debt structure and the events leading to the

filing of these chapter 11 cases, is set forth in detail in the declaration of Pavlos Kanellopoulos,

Chief Financial Officer of Excel Maritime Carriers Ltd. [Docket No. 3].

5.      On July 2, 2013, the Debtors applied to the Court for an order authorizing

them to retain Skadden pursuant to an engagement agreement dated August 27, 2012 and

supplemented by a second engagement letter dated April 2, 2013 (together, the "Engagement

Agreement") as their bankruptcy, corporate and litigation counsel, effective as of the Petition

Date. On August 5, 2013, the Court entered an order authorizing the Debtors to employ Skadden

3

as their counsel, effective as of the Petition Date, in accordance with the provisions of that order

and the Engagement Agreement.

## CASE STATUS

6.      The Debtors filed their amended plan of reorganization and disclosure

statement on November 27, 2013.  An order approving the disclosure statement with certain non-

material modifications was entered by the Court on December 10, 2013.  The Debtors have

submitted payment for all quarterly fees presently due to the United States Trustee and have filed

monthly operating reports for the months of July, August, September, October and November

2013.

## RELIEF REQUESTED

7.      In accordance with the Interim Compensation Procedures Order, by this

Interim Application, Skadden seeks interim approval of the full amount of fees and expenses

requested in the monthly fee statements for July, August, September and October 2013 (the

"Monthly Fee Statements") [Docket Nos. 338, 339, 404 and 433, respectively] which are

incorporated herein by reference and which may be summarized as follows:

| Period Covered | Date Filed | Docket No. | Fees Requested | Expenses Requested | Amount Payable | Holdback Amount |
|---|---|---|---|---|---|---|
| 7/2/13-7/31/13 | 9/20/13 | 338 | $1,217,976.32 | $17,632.35 | $992,013.41 | $243,595.20 |
| 8/1/13-8/31/13 | 9/20/13 | 339 | $1,652,749.15 | $63,239.81 | $1,385,439.13 | $330,549.83 |
| 9/1/13-9/30/13 | 10/21/13 | 404 | $1,978,568.08 | $46,860.32 | $1,629,714.78 | $395,713.62 |
| 10/1/13-10/31/13 | 11/20/13 | 433 | $1,207,833.46 | $25,301.58 | $991,568.35 | $241,566.69 |

8.      Skadden requests that the Court authorize and order (a) allowance and

payment (to the extent not already paid) of compensation for professional services rendered by

Skadden to the Debtors during the Application Period in the amount of $6,057,127.01

4

representing 100% of the fees earned and (b) allowance and reimbursement (to the extent not already reimbursed) of actual, necessary expenses incurred by Skadden during the Application Period in connection with the rendition of such professional services in the amount of $153,034.06. These amounts reflect a voluntary reduction of $371,076.15 in fees and $44,352.50 in expenses over the Application Period.[2] Detailed time records and expense charges in respect of these fees and expenses are included in the Monthly Fee Statements. A narrative statement of the services rendered in each category during the Application Period is set forth below.

9.      The Interim Compensation Procedures Order authorized the Debtors to pay 80% of requested fees (with a 20% holdback amount) and 100% of expenses of the amounts sought in each Monthly Fee Statement after the passage of 35 days following the last day of the month for which compensation was sought in such Monthly Fee Statement, provided that no objections were filed against the applicable Monthly Fee Statement. No such objections were filed. As of the present date, Skadden has received payments totaling $2,000,000.

**BASIS FOR RELIEF**

10.      It is not practical to describe every phone call made, meeting attended, document generated or other service provided, in the Debtors' cases during the Application Period. Thus, this Interim Application highlights the most significant services performed by Skadden for the Debtors during the Application Period, and detailed time records of each task performed are included in the Monthly Fee Statements. Skadden submits that the legal services and advice that it rendered to the Debtors in connection with their chapter 11 cases during the Application Period were necessary and beneficial to the Debtors, their creditors and their estates.

---

[2]      Skadden reserves the right to seek payment for all or any part of this voluntary reduction.

The following description of Skadden's services is a summary of the matters that occupied substantial amounts of attorney time during the Application Period.

## I.        Matters Over $100,000

11.        During the Application Period, Skadden professionals devoted significant time to key matters, the time value of which exceeds $100,000 for each such matter.  These matters are as follows:

**A.        Litigation (General) (Matter 25)
             Amount Sought: $3,430,590.42**

12.        During the Application Period, Skadden professionals assisted the Debtors with various litigation matters.  Skadden professionals reviewed, analyzed and responded to the Creditors' Committee's motion for termination of the Debtors' exclusive periods to file and solicit acceptances of a chapter 11 plan and motion for declaratory judgment regarding $20 million in escrowed funds.  Additionally, Skadden professionals researched, analyzed and responded to allegations by Robertson Maritime Investors, LLC ("Robertson Maritime") that the Debtors' pre-petition, internal corporate reorganizations violated the terms of a "right of first offer" contained in Christine Shipco LLC's limited liability company agreement.

13.        In connection with the foregoing, Skadden professionals drafted discovery requests on behalf of the Debtors, responded to numerous discovery requests propounded by the Creditors' Committee and Robertson Maritime, collected, reviewed and produced thousands of documents in response thereto, researched various discovery and litigation issues, prepared for depositions, negotiated the terms of a confidentiality stipulation and engaged in settlement discussions with the Creditors' Committee.  Skadden professionals attended numerous litigation strategy meetings, meet and confer conferences and court hearings in connection with the same.

14.     During the Application Period, Skadden professionals devoted a total of 7,853.3 hours to matters pertaining to litigation, for which compensation in the amount of $3,430,590.42 is sought.  This amount reflects a fee accommodation of $109,715.98.

**B.     Reorganization Plan / Plan Sponsors (Matter 31)
        Amount Sought: $729,482.36**

15.     During the Application Period, Skadden professionals assisted the Debtors in considering various plan alternatives, evaluating multiple settlement proposals, and negotiating the terms of an amended chapter 11 plan that maximizes value for the Debtors' estates, creditors and other stakeholders.  To that end, Skadden professionals assisted the Debtors in mediation proceedings before the Honorable Judge Peck and the development and negotiation of a plan term sheet among key constituencies in these chapter 11 cases.

16.     Skadden professionals advised the Debtors on various issues and strategy decisions related to the chapter 11 plan process and analyzed numerous issues related to plan structure, the classification and treatment of claims and interests, valuation issues, and distribution and implementation considerations.  Skadden professionals advised the Debtors with respect to settlement negotiations among the Debtors' secured lenders and the Creditors' Committee regarding the foregoing issues and attended numerous meetings, calls and presentations in connection with the same.  These efforts entailed considerable work preparing, reviewing and evaluating different strategic alternatives and plan term sheets.

17.     During the Application Period, Skadden professionals devoted a total of 729.2 hours to chapter 11 plan matters, for which compensation in the amount of $729,482.36 is sought.  This amount reflects a fee accommodation of $4,023.07.

7

C.    **Case Administration (Matter 8)**
      **Amount Sought:  $656,957.59**

        18.    During the Application Period, Skadden professional devoted substantial

resources to case administration matters and worked with the Debtors' management and

professionals to ensure that the Debtors conducted their affairs in accordance with the

Bankruptcy Code and applicable non-bankruptcy law.  Skadden held regularly scheduled

teleconferences on a weekly basis among Skadden professionals and the Debtors' financial

advisor, Miller Buckfire & Co., to ensure coordination of efforts among the Debtors'

professionals.

        19.    Skadden professionals prepared for, attended and represented the Debtors

on more than twenty-five matters at four hearings, including the first day hearing, each of which

involved multiple complex issues.  Skadden professionals also devoted time to coordinating

required notices and mailings, reviewing and responding to creditor correspondences, conducting

conferences with the Debtors' management and professionals, on the one hand, and various

interested parties, on the other, and monitoring the Court's docket.

        20.    During the Application Period, Skadden professionals devoted a total of

1,008.4 hours to matters pertaining to case administration, for which compensation in the amount

of $656,957.59 is sought.  This amount reflects a fee accommodation of $105,214.05.

D.    **Disclosure Statement / Voting Issues (Matter 14)**
      **Amount Sought: $267,190.11**

        21.    During the Application Period, Skadden professionals spent considerable

time and resources drafting and revising a disclosure statement with respect to the plan of

reorganization originally proposed by the Debtors on the Petition Date (this plan was ultimately

replaced by a plan agreed to after the Application Period among the Debtors, their secured

8

lenders, the Creditors' Committee and other parties) and coordinating with other parties in

interest, notably certain of the Debtors' secured lenders and Ivory, with respect to the language

and content of the disclosure statement.

22.    Although a draft disclosure statement was prepared prior to the Petition

Date, this draft required significant revisions post-filing to account for changes to the plan.  In

particular, Skadden professionals devoted significant time to numerous issues related to

identifying and describing significant developments in these chapter 11 cases that warranted

disclosure, negotiating the language of the disclosure statement with other parties in interest,

analyzing valuation, financial projections, liquidation analysis and treatment and discharge of

claims, and reviewing and responding to objections to the disclosure statement.

23.    Skadden professionals also devoted significant time to developing and

drafting solicitation procedures and related ballots, notices and forms in connection with the

disclosure statement and coordinating with the Debtors' voting and solicitation agent, Donlin,

Recano & Company.

24.    During the Application Period, Skadden professionals devoted a total of

364.6 hours to matters pertaining to the disclosure statement and voting issues, for which

compensation in the amount of $267,190.11 is sought.  This amount reflects a fee

accommodation of $17,544.40.

**E.    Asset Dispositions (Matter 3)**
        **Amount Sought: $205,814.41**

25.    During the Application Period, and in particular in July and August 2013,

Skadden devoted considerable resources to the marketing and sale of vessels belonging to

Debtors Odell International Ltd. and Minta Holdings S.A., including negotiating with Credit

Suisse (in its capacity as lender to Odell and Minta and the ultimate purchaser of both Debtors),

9

drafting various sale documents including bidding procedures and an asset purchase agreement, drafting various proceedings related to the same, and coordinating with Intermodal Shipbrokers Co. regarding the marketing of vessels owned by Odell and Minta and preparing Intermodal to give testimony at the sale hearing.

26.     During the Application Period, Skadden professionals devoted a total of 253.2 hours to matters pertaining to asset dispositions, for which compensation in the amount of $205,814.41 is sought.  This amount reflects a fee accommodation of $30,556.13.

**F.     Business Operations / Strategic Planning (Matter 7)**
**       Amount Sought: $168,834.02**

27.     During the Application Period, Skadden professionals spent significant time to matters relating to the Debtors' business operations and strategic planning relating to the chapter 11 cases.  Specifically, Skadden professionals developed various possible reorganization strategies for the Debtors, and participated in numerous calls and conferences with the Debtors and their financial advisors to discuss the same.  The Debtors also engaged with the Creditors' Committee and the Debtors' secured lenders in an effort to negotiate and develop a consensual strategy for resolving the Debtors' chapter 11 cases.  Skadden professionals also devoted time to drafting a second interim cash management procedures order to permit the Debtors to continue using their existing cash management system and obtained entry of the same by the Court, drafting and negotiating pleadings for approval of a settlement between the Debtor Ore Hansa Shipco LLC and a third party, and coordinating with the Debtors' public relations professionals regarding media inquiries.

28.     During the Application Period, Skadden professionals devoted a total of 159.7 hours to matters pertaining to asset dispositions, for which compensation in the amount of $168,834.02 is sought.  This amount reflects a fee accommodation of $2,710.75.

10

**G.    Retention / Fee Matters / Objections (Others) (Matter 34)**
**Amount Sought: $133,678.66**

29.    During the Application Period, and particularly in July and August 2013, Skadden professionals devoted considerable time and resources to advising the Debtors in connection with their retention of various professionals whose services are essential to maximizing value in these chapter 11 cases (the "Chapter 11 Professionals") as follows: (a) Miller Buckfire & Co. to provide investment banking and financial advisor services [Docket No. 74]; (b) Global Maritime Partners to provide financial advisor services [Docket No. 69]; (c) Ernst & Young LLP to provide accounting services [Docket No. 337]; (d) Marsoft Inc., to serve as maritime expert [Docket No. 376]; (e) Intermodal Shipbrokers Co. to serve as ship broker [Docket No. 101]; and (f) Joshua L. Seifert, PLLC to serve as conflicts counsel in connection with certain litigation matters [Docket No. 336].

30.    Work on these professional retention applications involved negotiating the terms of the retentions, determining the appropriate scope of services to be provided (and avoiding duplication of efforts), analyzing the propriety of proposed compensation structures and, in certain instances, coordinating with professionals with limited bankruptcy retention histories. In addition to drafting and reviewing the retention pleadings with respect to the Chapter 11 Professionals, Skadden advised and provided necessary services to the Debtors in connection with each of the matters described above and other matters relating to the Debtors' retention of the Chapter 11 Professionals, and worked to resolve certain objections and concerns of the U.S. Trustee.

31.    In addition, Skadden assisted the Debtors in connection with their retention of professionals used in the ordinary course of business.  The Debtors continue to operate their businesses in the ordinary course, and therefore require ordinary course

11

professionals to provide services that are unrelated to these chapter 11 cases. In particular, because of the international nature of the Debtors' shipping business, they are engaged in litigation in various foreign jurisdictions at all times and require foreign counsel to assist them. Skadden prepared the Debtors' motion for authority to employ certain ordinary course professionals [Docket No. 17], consulted and advised the Debtors with respect to the scope of services to be provided, their cost and their necessity and benefit to the Debtors' respective estates. Skadden professionals also assisted in the filing of verified statements relating to the ordinary course professionals.

32.    During the Application Period, Skadden professionals devoted a total of 193.7 hours to matters pertaining to professional retention and fees for other professionals, for which compensation in the amount of $133,678.66 is sought. This amount reflects a fee accommodation of $18,407.28.

## II.    Matters Between $50,000 and $100,000

33.    During the Application Period, Skadden professionals devoted significant time to key matters, the time value of which was greater than $50,000 but less than $100,000 for each such matter. These matters are as follows:

**A.    Non-Working Travel Time (Matter 28)
       Amount Sought: $86,895.50**

34.    During the Application Period, Skadden professionals were required to engage in travel to adequately represent the interests of the Debtors. The majority of this travel time relates to general litigation matters, including the production of documents in response to discovery requests, which required Skadden professionals to travel to London, England and Athens, Greece. Skadden professionals were also required to travel to and from hearings at the

12

Bankruptcy Court for the Southern District of New York in White Plains, New York and to and from various meetings.

35.    During the Application Period, Skadden devoted a total of 151.9 hours to non-working travel time, for which compensation in the amount of $86,895.50 is sought.  This amount reflects a voluntary reduction of one-half for non-working travel time and an additional reduction of $7,599, for a total reduction of $94,494.50.

**B.    Reports and Schedules (Matter 32)**
**      Amount Sought: $74,024.93**

36.    During the Application Period, Skadden professionals devoted considerable time to assisting the Debtors in the preparation of, and coordinating with the Debtors' financial advisor and accounting professionals regarding, schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules and Statements") for each of the Debtors.  This process included numerous meetings, teleconferences and correspondence with the Debtors' officers, employees and professionals to compile and verify information necessary to prepare and finalize the schedules and statements.  Skadden professionals reviewed, analyzed and revised the draft Schedules and Statements that were generated from the compiled documents and other information, and worked with Ernst & Young to finalize the Schedules and Statements.  Skadden professionals also assisted with the preparation of, and reviewed, the reports of non-Debtor affiliates filed pursuant to Bankruptcy Rule 2015.3 and the Debtors' monthly operating reports to the U.S. Trustee.

37.    During the Application Period, Skadden professionals devoted a total of 116.2 hours to matters pertaining to reports and schedules, for which compensation in the amount of $74,024.93 is sought.  This amount reflects a fee accommodation of $1,487.85.

C.     **Retention / Fee Matters (Skadden) (Matter 31)**
        **Amount Sought: $64,011.18**

        38.     Skadden's role as bankruptcy counsel to the Debtors required compliance

with retention and compensation procedures imposed by the Bankruptcy Code, the Bankruptcy

Rules, the Local Bankruptcy Rules and this Court. Under established case law, Skadden is

permitted to be compensated for its compliance activities. In support of its retention application,

Skadden professionals identified key parties-in-interest, reviewed its client database to ascertain

any connections with such parties-in-interest and drafted and filed a detailed declaration

disclosing all such known connections. Skadden was also required to update and supplement its

declaration as additional information became known to it. As such, during the Application

Period, Skadden continued to conduct periodic conflicts analyses to determine whether it was

performing or had performed services for any significant parties-in-interest in these bankruptcy

cases. Skadden professionals also devoted time to preparing and reviewing the Monthly Fee

Statements.

        39.     During the Application Period, Skadden professionals devoted a total of

177.2 hours to matters pertaining to Skadden's retention and fees, for which compensation in the

amount of $64,011.18 is sought. This amount reflects a fee accommodation of $21,429.78.

D.     **Automatic Stay (Matter 6)**
        **Amount Sought: $63,273.39**

        40.     During the Application Period, Skadden professionals researched,

provided and advice and coordinated with foreign counsel regarding obtaining recognition of the

automatic stay in foreign jurisdictions including South Africa and Australia.

41.     During the Application Period, Skadden professionals devoted a total of 67 hours to matters pertaining to the automatic stay for which compensation in the amount of $63,273.39 is sought.  This amount reflects a fee accommodation of $5,371.81.

**E.    Claims Administration (Matter 9)**
**Amount Sought: $50,786.26**

42.     During the Application Period, Skadden professionals devoted time to various matters relating to claims administration, including drafting and obtaining entry of a motion to set a bar date for claims and reviewing and analyzing scheduled and filed claims.

43.     During the Application Period, Skadden professionals devoted a total of 70 hours to matters pertaining to claims administration, for which compensation in the amount of $50,786.26 is sought.  This amount reflects a fee accommodation of $28,675.62.

**III.    Matters Between $10,000 and $50,000**

44.     During the Application Period, Skadden professionals devoted significant time to key matters, the time value of which was greater than $25,000 but less than $50,000 for each such matter.  These matters are as follows:

**A.    Financing (DIP and Emergence) (Matter 19)**
**Amount Sought: $49,269**

45.     During the Application Period, and in particular in July and August 2013, Skadden professionals devoted a significant amount of time to assisting the Debtors in their efforts to negotiate with their secured lenders concerning consensual use of cash collateral, and provided extensive advice and services in connection with negotiating, drafting and revising related documents and pleadings. Additionally, Skadden professionals filed a motion seeking Court approval of the use of cash collateral [Docket No. 12], and at a hearing on the motion prevailed over the objection of the Creditors' Committee.  Subsequently, in November 2013, the

15

Debtors provided advice and services in connection with the negotiation, drafting and revising of

a stipulation and consent order authorizing the Debtors to continue using cash collateral and

granting adequate protection [Docket No. 442].

46.    During the Application Period, Skadden professionals devoted a total of

60.1 hours to matters pertaining to financing, for which compensation in the amount of $49,269

is sought.  This amount reflects a fee accommodation of $6,916.82.

**B.    General Corporate Advice (Matter 1)
        Amount Sought: $19,013.12**

47.    Skadden professionals advised the Debtors with respect to various general

corporate matters, including the filing of required Securities Exchange Commission forms,

participation in and assistance with drafting board minutes, and other routine matters relating to

the Debtors' financial obligations.

48.    During the Application Period, Skadden professionals devoted a total of

25 hours to matters pertaining to general corporate advice, for which compensation in the

amount of $19,013.12 is sought.  This amount reflects a fee accommodation of $13,535.50.

**C.    Creditor Meetings / Statutory Committees (Matter 13)
        Amount Sought: $18,391.70**

49.    Throughout the Application Period, Skadden advised the Debtors with

respect to numerous matters involving the Creditors' Committee.  Initially, Skadden

professionals prepared for and attended the meeting conducted by the U.S. Trustee to form and

appoint the Creditors' Committee.  After the Creditors' Committee was appointed, Skadden

professionals spent considerable time meeting and communicating with the Creditors' Committee,

its counsel and financial advisors about all aspects of these chapter 11 cases, the Debtors'

businesses and negotiation of a settlement of the Creditors' Committee's claims.  Skadden

16

professionals also reviewed and analyzed the Debtors' records in response to various requests for information from the Creditors' Committee.  Skadden professionals also reviewed and commented on the Creditors' Committee's bylaws, in connection with the bylaws' provisions relating to confidentiality.

50.     During the Application Period, Skadden professionals devoted a total of 22.4 hours to matters pertaining to the Creditors' Committee, for which compensation in the amount of $18,391.70 is sought.  This amount reflects a fee accommodation of $1,539.

**D.    U.S. Trustee Matters (Matter 37)**
**Amount Sought: $11,266.50**

51.     During the Application Period, Skadden professionals advised and assisted the Debtors with respect to several U.S. Trustee matters.  Skadden professionals communicated and met with the U.S. Trustee, responded to the U.S. Trustee's requests for information, and ensured compliance with various chapter 11 operating requirements.

52.     During the Application Period, Skadden professionals devoted a total of 23.9 hours to matters pertaining to the U.S. Trustee, for which compensation in the amount of $11,266.50 is sought.

**IV.    Matters under $10,000**

53.     Skadden devoted time to other matters for the Debtors, the time value of which is less than $10,000 for each such matter.  These matters included advice relating to (a) insurance (matter 21); (b) leases (real property) (matter 24); (c) litigation (insurance recovery) (matter 26); (d) secured claims (matter 35); (e) tax (matter 36); and (f) vendor matters (matter 39).  Skadden professionals devoted a total of 49.5 hours to these matters and seeks compensation for these matters in the aggregate amount of $27,647.86.  This amount reflects a fee accommodation of $5,610.73.

17

## ALLOWANCE OF COMPENSATION

54.     Bankruptcy Code section 330 authorizes the Court to award "reasonable compensation for actual, necessary services rendered by the . . . professional person . . . ." 11 U.S.C. § 330.  In order to evaluate a request for allowance of fees by a professional person, a court must determine whether the services rendered were actual and necessary and the fees requested are reasonable.  Skadden respectfully submits that its request for fees earned during the Application Period satisfies that standard, for the following reasons:

(a)     <u>Time and Labor Required</u>:  During the Application Period, Skadden expended an aggregate of 11,325.3 hours in the representation of the Debtors at a blended rate of approximately $620.41 per hour.  All of the services rendered, as described herein and in detail in the Monthly Fee Statements, were necessary to enable the Debtors to perform their statutory duties, fulfill their fiduciary obligations and progress through reorganization.

(b)     <u>Nature and Complexity of the Cases</u>:  The Debtors' chapter 11 cases presented a unique set of challenging circumstances, and are unquestionably large and complex cases.  The Debtors' cases involved a vast array of legal issues, requiring the expertise of numerous legal professionals within different practice areas.  There are forty-three (previously forty-five) Debtors, numerous, sophisticated creditors and hundreds of millions of dollars of claims.  In particular, the work of negotiating a global settlement among all key parties in interest was complicated and required the investment of substantial time and energy by numerous Skadden professionals.

18

(c)     <u>Skill Required to Perform Legal Services</u>:  In order to address the issues presented during the Application Period, Skadden utilized its skills and experience in bankruptcy, banking, litigation, corporate, securities and other areas of the law.  In particular, Skadden restructuring attorneys have extensive knowledge and experience in dealing with the numerous issues that arise in large, complicated chapter 11 cases.  This depth of experience in chapter 11 matters has ensured that a number of pressing matters could be addressed promptly and efficiently.

(d)     <u>Experience, Reputation and Ability of Attorneys</u>:  Skadden respectfully submits that it and its attorneys are experienced, capable and have excellent reputations in the national restructuring industry.

(e)     <u>Customary Fee</u>:  The hourly rates at which Skadden's fees have been charged by each professional are set forth in the Monthly Fee Statements.  Pursuant to the terms of the Engagement Agreement, Skadden billed at its 2012 standard rates throughout the Application Period, representing a reduction from the amount it would typically charge similarly-situated clients.  These hourly rates compare favorably with rates charged by other national law firms for similar legal services.

(f)     <u>No Objections</u>:  The Monthly Fee Statements have been provided to the Debtors in accordance with the Interim Compensation Procedures Order and neither the Debtors nor any other party in interest has raised any objection to the fees and expenses sought by Skadden.

(g)    Awards in Similar Cases:  Skadden submits that the fees requested in this

Interim Application are comparable to fees requested and awarded in other

chapter 11 bankruptcy cases of this size, nature and complexity.

55.    For the foregoing reasons, and because of the benefits realized by the

Debtors on account of Skadden's professional services, Skadden requests that it be allowed

compensation for the full amount of professional services rendered during the Application Period,

for a total of $6,057,127.01.

56.    Skadden reserves the right to supplement this Interim Application to seek

amounts for work performed or expenses incurred during the Application Period but not yet

reflected in the Firm's time records or to amend the amounts listed herein and in the Monthly Fee

Statements to correct any bookkeeping errors.  Skadden has attempted to include in the Monthly

Fee Statements and, by extension, this Interim Application, all time and expenses relating to the

Application Period.  Delays in processing such time and receiving invoices for certain expenses

do occur, however.  In the event that a subsequent review reveals that additional professional

services have been rendered or expenses have been incurred on behalf of the Debtors during the

Application Period, which were not processed by the Firm's accounting system before the time of

this Interim Application, Skadden reserves the right to seek such additional fees and expenses by

subsequent application to the Court.[3]

57.    Skadden achieved cost efficiencies by employing a streamlined case

management structure.  Skadden designated a core group of associates who were assigned

responsibility for the myriad tasks that arose during these cases.  This (a) allowed certain

---

[3]    Skadden further reserves the right to request additional compensation at a later date for time spent preparing this Interim Application.

20

attorneys to work almost exclusively on the Debtors' cases, (b) permitted the cases to be staffed

with as little partner involvement as appropriate and (c) enabled Skadden to avoid performing

duplicative or unnecessary work.

58.    Other than between Skadden and its affiliated law practices and their

members, no agreement or understanding exists between Skadden and any other person or

persons for the sharing of compensation received or to be received for professional services

rendered in or in connection with these cases, nor will any be made except as permitted pursuant

to Bankruptcy Code section 504(b)(1).

## REIMBURSEMENT OF EXPENSES

59.    Bankruptcy Code section 330(a)(1)(B) provides for reimbursement to

approved professionals for all "actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B).

Complete descriptions of each expense incurred during these chapter 11 cases are attached to the

Monthly Fee Statements and incorporated by reference herein.

60.    The expenses and disbursements for which Skadden seeks reimbursement

comply with the Local Guidelines (defined below). Skadden does not enhance its disbursement

charges. All disbursements are billed at provider costs and in accordance with practices

customarily employed by the Firm and acceptable to its clients. Photocopies have been billed at

the lesser of $0.10 per page or cost. Skadden has not sought reimbursement for overtime

expenses, local travel costs or attorney meals.

61.    Skadden's' policy requires all attorneys to retain and submit for review

receipts and/or invoices for all disbursements incurred through outside vendors. Skadden

maintains all receipts and/or invoices related to each client's disbursement account in a central

storage facility, and such records can be produced upon request. Skadden has disbursed and

21

requests reimbursement of $153,034.06, which represents actual, necessary expenses incurred in
the rendition of professional services in these cases.

## CERTIFICATE OF COMPLIANCE AND WAIVER

62.     This Interim Application was prepared in accordance with the
requirements of Local Bankruptcy Rule 2016-1 and General Order M-447 (the "Local
Guidelines").  A Certification regarding compliance with the Local Guidelines is attached hereto
as Exhibit A.  To the extent that the Interim Application does not comply in all respects with the
requirements of Local Bankruptcy Rule 2016-1 and the Local Guidelines, Skadden believes that
such deviations are not material and respectfully requests that any such requirement be waived.

63.     Additionally, in compliance with the Local Guidelines, attached hereto as
Exhibit B are (a) a schedule setting forth the number of hours expended by each professional
who rendered services to the Debtors during the Application Period, (b) a summary of the actual
and necessary expenses for which Skadden seeks reimbursement and the total amount for each
such expense category and (c) a schedule summarizing the work performed in the Application
Period by task code category, and the number of hours and amount of fees that accrued in each
category.

## NOTICE

64.     Notice of this Motion has been given to (a) the U.S. Trustee; (b) Holland
& Knight LLP as counsel to the Steering Committee; (c) Akin Gump Strauss Hauer & Feld LLP
as counsel to the Creditors Committee; (d) the Debtors and (e) those parties who have formally
appeared and requested service in these cases pursuant to Bankruptcy Rule 2002.  Skadden
submits that no other or further notice need be provided.

**NO PRIOR REQUEST**

65.     No prior request for the relief sought in this Interim Application has been

made to this or any other court.

WHEREFORE, Skadden respectfully requests entry of an order, substantially in the form attached hereto as <u>Exhibit C</u>, authorizing and ordering with respect to the Application Period: (a) allowance and payment, to the extent not already paid, of compensation for professional services rendered by Skadden on behalf of the Debtors in the amount of $6,057,127.01 representing 100% of the fees earned, (b) allowance and reimbursement, to the extent not already reimbursed, of actual, necessary expenses incurred by Skadden in connection with the rendition of its professional services in the amount of $153,034.06, and (c) such other and further relief as is just and proper.

Dated:  New York, New York
         December 16, 2013

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP

                                        By: */s/ Mark A. McDermott*
                                        Jay M. Goffman
                                        Mark A. McDermott
                                        Shana A. Elberg
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Counsel for Debtors and
                                         Debtors in Possession

24

**<u>Exhibit A</u>**

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Four Times Square
New York, New York 10036
(212) 735-3000

Counsel for Debtors and
  Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| | : |
| In re: | :   Chapter 11 |
| | : |
| EXCEL MARITIME CARRIERS LTD., et al., | :   Case No. 13-23060 (RDD) |
| | : |
| | : |
| Debtors. | :   (Jointly Administered) |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CERTIFICATION IN SUPPORT OF FIRST INTERIM FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, COUNSEL FOR THE
DEBTORS, FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM
JULY 2, 2013 THROUGH AND INCLUDING OCTOBER 31, 2013**

      I, Mark A. McDermott, acting on behalf of Skadden, Arps, Slate, Meagher & Flom LLP

("Skadden" or the "Firm") as counsel to the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") hereby certify, pursuant to General Order M-447, Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases (the "Local Guidelines") that:

      1.     I am a member of the Firm.

      2.     I have read the First Interim Fee Application of Skadden, Arps, Slate,

Meagher & Flom LLP, Counsel for the Debtors, for Allowance and Payment of Compensation

for Services Rendered and Reimbursement of Expenses Incurred from July 2, 2013 through and

Including October 31, 2013 (the "Interim Application").

3.      To the best of my knowledge, information and belief, formed after

reasonable inquiry, the fees and expense reimbursement sought by Skadden in the Interim

Application conform with the Local Guidelines, except as specifically noted in the Interim

Application.

4.      Except to the extent that fees or disbursements are prohibited by the Local

Guidelines, the fees and expenses sought are billed at rates and in accordance with the practice

customarily employed by Skadden and generally accepted by Skadden's clients.

5.      In providing a reimbursable service, Skadden does not make a profit on

the service, regardless of whether the service is performed by Skadden or by a third party.  In

seeking reimbursement for any service that Skadden justifiably purchased or contracted from a

third party, Skadden is requesting reimbursement only for the amount billed to Skadden by the

third party and paid by Skadden to such third party.

6.      In accordance with the Local Guidelines, the Debtors and the Creditors'

Committee have been provided, not later than 21 days after the end of each month, with a

monthly statement of the fees and disbursements accrued during such month.[4]

7.      Skadden will provide a copy of the Interim Application prior to the filing

thereof to the Debtors and the Creditors' Committee, among other notice parties, and each party

in interest will have at least 14 days to review Interim Application before the objection deadline

with respect thereto.  Skadden submits that any deviation from the Local Guidelines, which

---

[4]      Pursuant to the Interim Compensation Order, professionals were afforded until September 20, 2013 to file
monthly fee statements for the month of July 2013.

require copies of fee applications be provided to the Debtors and the Creditors' Committee 14

days before filing, is not material in this case as (a) all parties in interest have received copies of

the Monthly Fee Statements and (b) all parties in interest will receive copies of the Interim

Application significantly in advance of the objection deadline.

Dated:  New York, New York
         December 16, 2013

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: */s/ Mark A. McDermott*
Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Four Times Square
New York, New York 10036
(212) 735-3000

Counsel for Debtors and
 Debtors in Possession

**<u>Exhibit B</u>**

**COMPENSATION BY PROFESSIONAL PERSON**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**FOR THE PERIOD JULY 2, 2013 THROUGH OCTOBER 31, 2013**

| NAME OF PROFESSIONAL PARTNERS AND COUNSELS: | DEPARTMENT | YEAR ADMITTED | EFFECTIVE HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Lauren E. Aguiar | Litigation-General | 1996 | $1,075.00 | 44.70 | $48,052.50 |
| Jonathan Frank | Litigation-General | 1984 | $1,075.00 | 402.30 | $432,472.50 |
| Jay M. Goffman | Corporate Restructuring | 1984 | $1,150.00 | 272.00 | $312,800.00 |
| Laura A. Kaufmann Belkhayat | Corporate Finance | 2003 | $830.00 | 13.80 | $11,454.00 |
| Mark A. McDermott | Corporate Restructuring | 1992 | $1,045.00 | 323.70 | $338,266.50 |
| George A. Zimmerman | Litigation-General | 1980 | $1,150.00 | 352.60 | $405,490.00 |
| Steven J. Kolleeny | Litigation-General | 1980 | $875.00 | 295.90 | $258,912.50 |
| Shana A. Elberg | Corporate Restructuring | 2002 | $795.00 | 376.40 | $302,091.00 |
| Chris Mallon | Corporate Restructuring | | $1,079.51 – 1,910.63[1] | 443.40 | $554,464.56 |
| **Subtotal:** | | | | 2524.80 | $2,664,003.56 |

[1] Range in hourly rates reflects daily conversion from British Pound Rate of £725.00

**COMPENSATION BY PROFESSIONAL PERSON**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**FOR THE PERIOD JULY 2, 2013 THROUGH OCTOBER 31, 2013**

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT | YEAR ADMITTED | EFFECTIVE HOURLY RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Carel Ale | Litigation-General | | $495.00 | 27.00 | $13,365.00 |
| Kathiana Aurelien | Labor | 2011 | $570.00 | 14.00 | $7,980.00 |
| Rotem Bar-Kokhva | Tax | 2006 | $755.00 | 43.00 | $32,465.00 |
| Julie E. Cohen | Litigation-General | 2009 | $675.00 | 750.70 | $506,722.50 |
| Elliott M. Davis | Litigation-General | 2008 | $695.00 | 26.00 | $18,070.00 |
| James D. Falconer | Corporate Restructuring | 2006 | $640.26 – 694.00[2] | 90.10 | $60,094.90 |
| Adi Habbu | Corporate Restructuring | 2011 | $630.00 | 375.70 | $236,691.00 |
| Thomas D. Haley | Litigation-General | 2011 | $570.00 | 7.30 | $4,161.00 |
| Benjamin S. Halperin | Litigation-General | 2013 | $425.00 | 401.20 | $170,510.00 |
| Miranda C. Harrison | Corporate Finance | 2012 | $630.00 | 14.10 | $8,883.00 |
| Raquelle L. Kaye | Corporate Restructuring | | $755.00 | 12.80 | $9,664.00 |
| Anna Heimbichner | Litigation-General | 2012 | $481.38 – 485.66[3] | 12.60 | $6,111.54 |
| Mollie Kornreich | Litigation-General | 2010 | $570.00 | 461.50 | $263,397.00 |
| Julie Lanz | Corporate Restructuring | 2010 | $675.00 | 465.10 | $313,942.50 |
| Heather A. Lohman | Litigation-General | | $755.00 | 79.50 | $60,022.50 |
| Suzanne D.T. Lovett | Corporate Restructuring | 1992 | $755.00 | 153.50 | $115,892.50 |
| Christine A. Okike | Corporate Restructuring | 2009 | $675.00 | 414.00 | $279,450.00 |

---

[2] Range in hourly rates reflects daily conversion from British Pound Rate of £430.00
[3] Range in hourly rates reflects daily conversion from British Pound Rate of £310.00

| Name | Department | Year | Rate | Hours | Amount |
|---|---|---|---|---|---|
| Cecilia Poon | Corporate Finance | 2008 | $630.00 | 11.00 | $6,930.00 |
| Jason C. Putter | Corporate Restructuring | 2007 | $725.00 | 106.70 | $77,357.50 |
| Abigail Sheehan | Litigation-General | 2013 | $425.00 | 673.20 | $286,110.00 |
| Spencer R. Short | Mass Tort/Insurance | 2008 | $695.00 | 76.30 | $53,028.50 |
| Daniel M. Smith | Antitrust | | $395.00 | 69.30 | $27,373.50 |
| Melissa M. Tiarks | Banking | 2009 | $695.00 | 18.30 | $12,718.50 |
| Vivian Wong | Corporate Restructuring | 2012 | $461.58 − 500.32[3] | 47.30 | $22,426.76 |
| Ian Aldridge | Litigation-General | | $147.29-150.82[4] | 244.10 | $36,194.19 |
| Samuel Barrett | Litigation-General | | $150.20-150.89[4] | 39.90 | $6,007.78 |
| Natasha Caldwell | Litigation-General | | $149.30-150.90[4] | 49.00 | $7,347.13 |
| Hitesh Chowdhry | Litigation-General | | $147.29-150.91[4] | 172.60 | $25,563.60 |
| Bindya Hindocha | Litigation-General | | $148.25-150.88[4] | 121.80 | $18,193.57 |
| Zachariah Judge | Litigation-General | | $147.29-150.89[4] | 212.50 | $31,570.10 |
| Nilufar Kasimova | Litigation-General | | $147.29-150.88[4] | 266.90 | $39,636.26 |
| Thomas Kew | Litigation-General | | $147.29-151.01[4] | 213.50 | $31,658.75 |
| Andrew Kollington | Litigation-General | | $147.29-148.82[4] | 214.20 | $31,709.71 |
| Ivor D. McGurk | Litigation-General | | $147.29-150.92[4] | 189.00 | $28,069.87 |
| Ruby Moreea | Litigation-General | | $147.29-150.88[4] | 257.20 | $38,192.33 |
| Christopher O'Connor | Litigation-General | | $147.29-148.13[4] | 151.40 | $22,367.63 |
| Brianna Parbury | Litigation-General | | $147.29-148.13[4] | 61.60 | $9,105.33 |
| Romina Rivero | Litigation-General | | $147.29-150.89[4] | 262.60 | $38,989.03 |

[4] Range in hourly rates reflects daily conversion from British Pound Rate of £95.00

| Michail Thomas | Litigation-General | | $147.29-150.90[4] | 234.80 | $34,847.04 |
|---|---|---|---|---|---|
| Haseeb Ur-Rehman | Litigation-General | | $147.29-150.89[4] | 255.30 | $37,918.94 |
| Nataliya Walker-Haworth | Litigation-General | | $147.29-150.89[4] | 239.10 | $35,498.21 |
| Natalie Zwar | Litigation-General | | $147.29-150.21[4] | 192.30 | $28,511.35 |
| **Subtotal:** | | | | 7,728.00 | $3,094,748.02 |

**COMPENSATION BY PROFESSIONAL PERSON**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**FOR THE PERIOD JULY 2, 2013 THROUGH OCTOBER 31, 2013**

| NAME OF PROFESSIONAL LEGAL ASSISTANTS AND OTHER NON-LEGAL STAFF: | DEPARTMENT | EFFECTIVE HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Robert Hochberg | Legal Technology | $365.00 | 149.50 | $53,847.50 |
| Steven Shankroff | Legal Technology | $445.00 | 99.70 | $44,366.50 |
| Shafique A. Syed | Legal Technology | | 111.00 | $39,956.43 |
| Jennifer M. Henriquez | L/A Lit General | $310.00 | 105.00 | $32,550.00 |
| John C. Murphy | L/A Corporate Restructuring | $310.00 | 30.10 | $9,331.00 |
| Andrew Patrick | L/A IP/IT Transactions | $195.00 | 9.10 | $1,774.50 |
| Rachel Sklar | L/A Lit General | $195.00 | 9.90 | $1,930.50 |
| Kwok T. Chiu | Legal Technology | $195.00 | 5.90 | $1,150.50 |
| Stacey P. Delacruz | Legal Technology | $195.00 | 28.60 | $5,577.00 |
| Majid Murad | Legal Technology | $310.00 | 9.00 | $2,790.00 |
| Snow Yuan | Legal Technology | $195.00 | 7.40 | $1,443.00 |
| Damion Fallon | L/A –off hours/PT | $240.00 | 5.40 | $1,296.00 |
| Margarita Morales-Diaz | L/A Lit General | $125.00 | 6.90 | $862.50 |
| Nicolle C. Perry | L/A Corporate Restructuring | $195.00 | 418.50 | $81,607.50 |
| Joseph K. Leung | Legal Technology | $310.00 | 37.00 | $14,941.00 |
| Jordan M. Zim | L/A Lit General | $195.00 | 39.50 | $4,231.50 |
| **Subtotal:** | | | 1072.50 | $298,375.43 |

| TIMEKEEPERS TOTALS: | EFFECTIVE BLENDED RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $1057.17 | 2,524.80 | $2,664,003.56 |
| Associates | $470.94 | 7,728.00 | $3,094,748.02 |
| Legal Assistants | $272.71 | 1,072.50 | $298,375.43 |
| **Blended Attorney Rate** | $620.41 | | |
| **Total Fees Incurred** | | **11,325.30** | **$6,057,127.01** |

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

**EXPENSE SUMMARY FOR THE PERIOD**
**JULY 2, 2013 THROUGH OCTOBER 31, 2013**

| Expense Category | Total Expenses |
|---|---|
| Computer Legal Research | $28,336.16 |
| Telecommunications | $3,177.57 |
| In-House Reproduction (@ $.10 per page) | $14,541.65 |
| Outside Research | $2,015.19 |
| Filing/Court Fees | $3,478.00 |
| Out-Of-Town Travel | $41,990.88 |
| Word Processing | $135.00 |
| Courier/Express/Postage | $1,489.58 |
| Electronic Document Management | $57,489.45 |
| Other | $380.58 |
| **TOTAL** | $153,034.06 |

**COMPENSATION BY PROJECT CATEGORY**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**FOR THE PERIOD JULY 2, 2013 THROUGH OCTOBER 31, 2013**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 1 | General Corporate Advice | 25.00 | $19,013.12 |
| 3 | Asset Dispositions (General) | 253.20 | $205,814.41 |
| 6 | Automatic Stay (Relief Actions) | 67.00 | $63,273.39 |
| 7 | Business Operations / Strategic Planning | 159.70 | $168,834.02 |
| 8 | Case Administration | 1,008.40 | $656,957.59 |
| 9 | Claims Admin. (General) | 70.00 | $50,786.26 |
| 13 | Creditor Meetings / Statutory Committees | 22.40 | $18,391.70 |
| 14 | Disclosure Statement / Voting Issues | 364.60 | $267,190.11 |
| 19 | Financing (DIP and Emergence) | 60.10 | $49,269.00 |
| 21 | Insurance | 5.30 | $3,564.00 |
| 24 | Leases (Real Property) | 23.70 | $8,892.00 |
| 25 | Litigation (General) | 7,853.30 | $3,430,590.42 |
| 26 | Litigation (Insurance Recovery) | 5.20 | $3,447.87 |
| 28 | Nonworking Travel Time | 151.90 | $86,895.50 |
| 31 | Reorganization Plan / Plan Sponsors | 729.20 | $729,482.36 |
| 32 | Reports and Schedules | 116.20 | $74,024.93 |
| 33 | Retention / Fee Matters (SASM&F) | 177.20 | $64,011.18 |
| 34 | Retention / Fee Matters / Objections (Others) | 193.70 | $133,678.66 |
| 35 | Secured Claims | 4.90 | $4,179.27 |

| 36 | Tax Matters | 7.20 | $5,561.22 |
|---|---|---|---|
| 37 | U.S. Trustee Matters | 23.90 | $11,266.50 |
| 39 | Vendor Matters | 3.20 | $2,003.50 |
| **Total:** | | **11,325.30** | **$6,057,127.01** |

**<u>Exhibit C</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
EXCEL MARITIME CARRIERS LTD., et                              :    Case No. 13-23060 (RDD)
al.,                                                          :
                                                              :
                        Debtors.                              :    (Jointly Administered)
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER GRANTING FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, COUNSEL FOR THE DEBTORS, FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM JULY 2, 2013 THROUGH AND INCLUDING OCTOBER 31, 2013

Upon the application (the "Application") of Skadden, Arps, Slate, Meagher &

Flom LLP and its affiliated law offices ("Skadden"), counsel to the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"),[1] pursuant to sections 105(a) and 331 of title

11 of the United States Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, Rule

2016-1 of the Local Bankruptcy Rules for the Southern District of New York, General Order M-

447, *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of*

---

[1]    The Debtors and the last four digits of their taxpayer identification numbers are as follows: Excel Maritime Carriers LLC (9430), Excel Maritime Carriers Ltd. (2212), Amanda Enterprises Limited (8034), Barland Holdings Inc. (8057), Candy Enterprises Inc. (8053), Castalia Services Ltd. (8055), Centel Shipping Company Limited (0861), Coal Gypsy Shipco LLC (2212), Coal Hunter Shipco LLC (2212), Coal Pride Shipco LLC (2212), Fianna Navigation S.A. (8041), Fountain Services Limited (8054), Grain Express Shipco LLC (2212), Grain Harvester Shipco LLC (2212), Harvey Development Corp. (8048), Ingram Limited (8039), Iron Anne Shipco LLC (2212), Iron Beauty Shipco LLC (2212), Iron Bill Shipco LLC (2212), Iron Bradyn Shipco LLC (2212), Iron Brooke Shipco LLC (2212), Iron Fuzeyya Shipco LLC (2212), Iron Kalypso Shipco LLC (2212), Iron Knight Shipco LLC (2212), Iron Lindrew Shipco LLC (2212), Iron Manolis Shipco LLC (2212), Iron Miner Shipco LLC (2212), Iron Vassilis Shipco LLC (2212), Kirmar Shipco LLC (2212), Liegh Jane Navigation S.A. (8043), Lowlands Beilun Shipco LLC (2212), Marias Trading Inc. (8036), Ore Hansa Shipco LLC (2212), Pascha Shipco LLC (2212), Point Holdings Ltd. (NA), Sandra Shipco LLC (2212), Santa Barbara Shipco LLC (2212), Snapper Marine Ltd. (8051), Tanaka Services Ltd. (8037), Teagan Shipholding S.A. (8045), Thurman International Ltd. (NA), Whitelaw Enterprises Co. (8050), and Yasmine International Inc. (8046).  The address for Excel Maritime Carriers LLC is 777 Westchester Avenue, Suite 101, White Plains, New York USA 10604 and the address for all other Debtors is c/o Excel Maritime Carriers Ltd., 17th KM National Road Athens, Lamia & Finikos Street, 145 64 Nea Kifisia, Athens, Greece.

*New York Bankruptcy Cases*, and this Court's order establishing procedures for interim compensation and reimbursement of professional expenses [Docket No. 289], seeking entry of an order allowing and authorizing compensation for services rendered and reimbursement of expenses for the period from July 2, 2013 through and including October 31, 2013 (the "Application Period"); and a hearing having been held before this Court to consider the Application (the "Hearing"); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that notice of the Application was good and sufficient under the circumstances and that no other or further notice need be given; and for the reasons set forth more fully on the record of the Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Application is granted and the fees and expenses of Skadden for the Application Period are approved on an interim basis, in the amounts and to the extent provided on Schedule 1 attached hereto.

2.    The Debtors are authorized and directed to pay promptly to Skadden the amount of $4,210,161.07, which is the total amount outstanding and unpaid for services rendered and expenses incurred by Skadden during the Application Period.

3.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to implementation of this Order.

Dated:  White Plains, New York
_____, 2013

_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## Schedule 1

Case No: 13-23060 (RDD) (Jointly Administered)
Case Name: In re EXCEL MARITIME CARRIERS LTD., et al.

| FIRST INTERIM COMPENSATION PERIOD July 2, 2013 – October 31, 2013 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (1) Applicant | (2) Date/Document Number of Application | (3) Interim Fees Requested on Application | (4) Interim Fees Allowed | (5) Fees to be Paid for Current Application Period | (6) Fees to be Paid for Prior Application Period(s) (if any) (i.e., Holdback Release) | (7) Total Interim Fees to be Paid | (8) Interim Expenses Requested | (9) Interim Expenses to be Paid for Current Application Period |
| Skadden, Arps, Slate, Meagher & Flom LLP | 12/16/2013 Docket No. [  ] | $6,057,127.01 | $6,057,127.01 | $4,210,161.07[*] | N/A | $4,210,161.07[*] | $153,034.06 | $0.00[†] |

---

[*]  This amount reflects the total interim fees requested herein, less amounts already paid to Skadden as of the date hereof pursuant to the Interim Fee Order.

[†]  100% of the expenses requested herein have already been paid to Skadden pursuant to the Interim Fee Order.